IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DENNIS STRONG,** | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 11-949-CJP |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Dennis Strong is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).[1]

**Procedural History**

Mr. Strong applied for benefits in July, 2007, alleging disability beginning on February 15, 2006. (Tr. 196). The application was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) Christina Young Mein denied the application on January 20, 2010. (Tr. 97-105). Plaintiff submitted additional medical records to the Appeals Council in support of his request for review. (Tr. 8-93). Review was denied by the Appeals Council, and the January 20, 2010, decision became the final agency decision. (Tr. 1).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in

---

[1]This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 8.

this court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

(1)  The Appeals Council erred in determining that Dr. Beaty's February 9, 2010, report was not material because it related to plaintiff's condition after the date of the ALJ's decision.

(2)  The ALJ's decision was contrary to the weight of the evidence when Dr. Beaty's February 9, 2010, report is considered.

(3)  Plaintiff should have been determined to be disabled because, if he were limited to sedentary work, Grid Rule 201.14 would direct a finding of disabled.

## Applicable Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5)

whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, **737 F.2d 714, 715 (7th Cir. 1984).**  The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that claimant is capable of performing.  **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).**  Thus, the Court must determine not whether Mr. Strong was, in fact, disabled during the relevant time period, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995)).**

This Court uses the Supreme Court's definition of "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401 (1971).**  In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence,

resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Mein followed the five-step analytical framework described above. She found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, and that he was insured for DIB through September 30, 2011. She concluded that plaintiff had severe impairments of left shoulder adhesive capsulitis, degenerative joint disease of the left shoulder, cervical spine and lumbar spine, and alcohol dependence. She determined that his impairments do not meet or equal a listed impairment, which plaintiff does not challenge.

The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a limited range of work at the light exertional level. At step 4, the ALJ determined that plaintiff was not able to perform his past relevant work. At step 5, relying on the testimony of a vocational expert, she determined that plaintiff was able to do other work that existed in the national economy, such as electrical assembler and basket assembler. (Tr. 97-105).

### The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Memorandum and Order. The following is a summary of some of the pertinent portions of the written record, focused on the issues raised by plaintiff.

**1.      Agency Forms**

Mr. Strong was born in 1956 and was 49 years on the alleged date of disability. (Tr. 196). He had surgery for a torn labrum in his left shoulder, and was unable to return to his work thereafter. He also alleged arthritis in his neck, back and hands. (Tr. 225).

Mr. Strong has a GED. He was not in special education classes. (Tr. 230). He had primarily worked as a mechanic. Most recently, he had worked as a mechanic at a golf course. (Tr. 226).

**2.    Evidentiary Hearing- November 23, 2009**

Plaintiff was represented at the hearing by an attorney. (Tr. 110).

Mr. Strong testified that he lived with his common law wife and her eighteen year old son. (Tr. 114). He said that he drank six to eight beers a day. (Tr. 116). He had surgery on his left shoulder in 2006. (Tr. 117-118). He saw his family doctor, Dr. Beaty, for pain in his right shoulder in October, 2009. He could not afford to see an orthopedic surgeon. (Tr. 117). Dr. Beaty told him that he "tore it up" and would need surgery. (Tr. 119). He had constant pain in his back. Dr. Beaty wanted to do an MRI, but he had no insurance and could not afford it. (Tr. 121). He still had pain in his left shoulder and limited ability to move it. (Tr. 127). Mr. Strong said that he would have trouble working with the public because of his temper. (Tr. 120).

A vocational expert (VE) testified. The ALJ asked the VE to assume a person who could do light work, limited to no pushing or pulling, no overhead reaching, no climbing of ladders, ropes, scaffolds, no interaction with the public and only occasional interaction with coworkers. The VE testified that such a person would not be able to do plaintiff's past relevant work. However, this person could do some light, unskilled work such as electrical assembler and basket assembler. (Tr. 135).

**3.     Medical Records Before the ALJ**

Plaintiff injured his left shoulder in a work accident in August, 2005.  Dr. Ronald Bassman performed arthroscopic surgery consisting of labral repair and subacromial decompression on plaintiff's left shoulder on February 13, 2006.  (Tr. 340-341).   Plaintiff underwent physical therapy from March 13, 2006, through June 5, 2006.  (Tr. 297-303). Dr. Bassman released him to return to work in July, 2006, with permanent restrictions of no lifting over 25 pounds and no work at or above shoulder level.  (Tr. 326).  Plaintiff continued to complain of pain and limitation of range of motion.  In August, 2006, based on an MRI study, Dr. Bassman diagnosed adhesive capsulitis ("frozen shoulder").  (Tr. 322-323).  The same work restrictions were in effect.  (Tr. 324).

Dr. Timothy Beaty was plaintiff's primary care physician.  Mr. Strong saw him on January 8, 2007, for pain in the left side of his neck.  He had been unable to return to work after surgery.  He still had problems with his left shoulder as well.  An MRI of the cervical spine showed spondylosis with disc space narrowing at C5-6 and C6-7.  (Tr. 287-290).  In November, 2007, Mr Strong complained to Dr. Beaty of pain in his low back and neck.  On exam, he had no spinal tenderness and some pain with extremes of range of motion in the neck and back.  Dr. Beaty prescribed pain medication.  (Tr. 360-361).

Dr. Sanrit Charnond performed a consultative examination on November 27, 2007.  Mr. Strong complained of left shoulder pain as well as neck and back pain.  On examination, he was 5' 9" tall and weighed 170 pounds.  He walked without any degree of difficulty.  Muscle strength was 4/5 and symmetrical throughout.  He had no muscle atrophy or acute inflammatory joint disease.  Grip strength was full in both hands.  Gross and fine fingering movements were normal.

He had no limitation in sitting, walking or standing.  Range of motion of the cervical and lumbar spines was limited, as was range of motion of both shoulders.  (Tr. 342-346).

Plaintiff continued to see Dr. Beaty.  In June, 2008, he said that he had pain in his left low back that sometimes radiated into his leg.  On exam, he had tenderness on the left lower side of his spine and pain in the thoracolumbar spine on complete forward and lateral flexion.  Straight leg raising was negative.  Dr. Beaty prescribed Ultram for pain, along with one Elavil tablet at bedtime.  (Tr. 407-408).  In October, 2009, plaintiff told Dr. Beaty that he had been having pain in his right shoulder for the past two months with no specific injury.  Dr. Beaty prescribed Flexeril and Vicodin, and indicated that he would refer him to an orthopedist if he did not improve.  The assessment was right shoulder pain.  (Tr. 406).

On October 19, 2009, Dr. Beaty completed a report in which he stated that Mr. Strong's current diagnoses were back and shoulder pain.  He wrote that Mr. Strong had pain with any movement of his right arm above the shoulder, and that he had spondylosis with spurring which had progressed.  He opined that "At this time he would not be able to hold a full time job" and indicated that he would refer Mr. Strong to an orthopedic specialist if he did not improve.  (Tr. 405).

**4.**     **RFC Assessments**

Based upon a review of medical records, a state agency consultant completed a Physical Residual Functional Capacity (RFC) Assessment form on December 12, 2007.   He opined that Mr. Strong could do work at the light level (lift 20 pounds occasionally, lift 10 pounds frequently, sit for a total of 6 hours a day, stand/walk for a total of 6 hours a day), with limitations.  He was limited in pushing and pulling with the upper extremities and could never

climb ladders, ropes or scaffolds.  He was limited in reaching in all directions, including overhead, and in handling, fingering and feeling.  (Tr. 337-354).

A second state agency consultant agreed with the above assessment in April, 2008.  (Tr. 367-369).

**5.     Records not before the ALJ**

The transcript contains medical records which were not before the ALJ and which post-date her decision.  This evidence was submitted to the Appeals Council in connection with plaintiff's request for review.  See, Tr. 8-93.

Included in these records is a report from Dr. Beaty, dated February 9, 2010.  Dr. Beaty completed this report at the request of the Illinois Department of Human Services, for use in determining Mr. Strong's application for state medical benefits.  (Tr. 11-17).  On the first page of the form, Dr. Beaty stated that he had last examined plaintiff on October 6, 2009.  (Tr. 14).  However, on the last page, he said that he had examined him February 8, 2010.  (Tr. 17).  Dr. Beaty wrote that Mr. Strong had low back pain since 2003, left shoulder pain since 2005, and right shoulder pain since August, 2009.  (Tr. 14).  At the part of the form which asked him to evaluate plaintiff's musculoskeletal system, Dr. Beaty wrote "see note."  (Tr. 15).  It is unclear what note he was referring to.  He indicated that plaintiff's lumbosacral spine had been x-rayed in 2009, and his right shoulder had been x-rayed in February, 2010.  Dr. Beaty opined that plaintiff could not lift more than 10 pounds at a time, and that he had other serious limitations.  For instance, he had more than 60% reduced capacity to bend, stand, stoop and sit, and 20 to 50% reduced capacity to walk.  (Tr. 17).

## Analysis

Plaintiff's second point cannot be considered by this Court. Dr. Beaty's 2010 report was not part of the record that was before the ALJ. Therefore, it cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. ***Farrell v. Astrue***, 692 F.3d 767, 770 (7th Cir. 2012); ***Getch v. Astrue***, 539 F.3d 473, 484 (7th Cir. 2008); ***Rice v. Barnhart***, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

In his first point, plaintiff argues that the Appeals Council erred in refusing to consider Dr. Beaty's February 9, 2010, report. In denying review, the Appeals Council acknowledged that plaintiff had submitted new information, including records from Dr. Beaty dated January 28, 2010, through February 24, 2010. However, the Appeals Council said, "The Administrative Law Judge decided your case through January 20, 2010. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 20, 2010." (Tr. 1-2).

Plaintiff argues that the determination that Dr. Beaty's report was "about a later time" is incorrect.

With respect to Appeals Council review, 20 C.F.R. §404.970(b) provides that

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Pursuant to **42 U.S.C. § 405(g)**, a claimant may obtain review in this Court of a "final

decision of the Commissioner of Social Security." When the Appeals Council denies a request for review, as happened here, the decision of the ALJ becomes the final decision of the Commissioner, and it is the decision of the ALJ which is reviewed by this Court. **20 C.F.R. §404.981;** *Eads v. Secretary of Dept. of Health and Human Services***, 983 F.2d 815, 816 (7th Cir. 1993).** The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and is not subject not subject to review by this Court. **42 U.S.C. § 405(g);** *Perkins v. Chater***, 107 F.3d 1290, 1294 (7th Cir. 1997).** However, the Court may consider the issue of whether an Appeals Council order refusing to consider additional evidence was the result of a mistake of law. *Farrell***, 692 F3d at 770-771;** *Eads***, 983 F.2d at 817.** An example of a such a mistake of law is a determination by the Appeals Council that additional evidence submitted to it does not constitute new and material evidence. *Farrell***, 692 F.3d at 770-771,** *Nelson v. Bowen***, 855 F.2d 503, 506-08 (7th Cir. 1988);** *Perkins***, 107 F.3d at 1294.**

Notably, the standard for whether evidence is new that is applicable here is not the standard applicable to a request for remand under sentence six of 42 U.S.C. §405(g). Thus, plaintiff need not show that the new evidence was not available to him at the time of the administrative proceeding. **See,** *Perkins***, 107 F.3d at 1296.** Evidence is "new" in the present context if it is, literally, new to the administrative record. **See,** *Farrell v. Astrue***, 692 F.3d at 771**. And, evidence is "material" if it speaks to the plaintiff's condition during the period at issue, i.e., at or before the time of the ALJ's decision. *Getch v. Astrue,* **539 F.3d 473, 484 (7th Cir. 2008).**

Defendant argues, unpersuasively, that Dr. Beaty's report was not material because it spoke only to plaintiff's condition on February 9, 2010, and not to his condition at the time of the ALJ's decision.  The Court cannot accept this view.  First, the ALJ issued her decision on January 20, 2010, only twenty days before Dr. Beaty wrote his report.  In view of the nature of plaintiff's diagnoses, it is highly unlikely that there was a dramatic change in his condition in those twenty days.  The records do not reflect, and defendant does not argue, that there was any kind of traumatic event during that time period which caused plaintiff's condition to suddenly deteriorate.  Dr. Beaty's report referred to conditions that were first manifested long before the ALJ's decision.  **See,** ***Farrell v Astrue*, 692 F.3d 767, 771 (7th Cir. 2012)**, holding that a diagnosis of fibromylagia made after the ALJ's decision was material where it confirmed allusions to fibromylagia present in earlier records.  In addition, the letter asking for the report instructed Dr. Beaty to include copies of his office notes for the past 12 months, suggesting that the IDHS was requesting a longitudinal opinion from the doctor.

This Court concludes that the Appeals Council erred as a matter of law in determining that Dr. Beaty's 2010 report was not material because it was "about a later time."  Of course, that is not to say that the Appeals Council erred in denying review, which is an issue not before the Court.  The Court holds only that the Appeals Council erred in deciding that it should not consider Dr. Beaty's report.  The Appeals Council's decision to deny or grant review after considering all material evidence, including Dr. Beaty's 2010, report is a discretionary decision that is not subject to judicial review.  ***Getch*, 539 F.3d at 483-484, citing *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).**

In view of the Appeals Council's error, remand pursuant to sentence four of Section

405(g) is warranted. Upon remand pursuant to sentence four, judgment in favor of plaintiff must be entered. *Shalala v. Schaefer*, **509 U.S. 292, 297-298 (1993)**.

### Conclusion

The Commissioner's final decision denying Dennis Strong's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:** November 21, 2012.

    s/ Clifford J. Proud
    CLIFFORD J. PROUD
    UNITED STATES MAGISTRATE JUDGE